## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JOREL SHOPHAR,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 16-CV-4043-DDC-KGS** |
| **STATE OF KANSAS, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Pro se plaintiff Jorel D. Shopar brings this action against the mother of his two children, various state and local agencies, and individuals who, he contends, have contrived a false campaign against him and conspired to terminate his parental rights. Generally, plaintiff alleges that defendants discriminated against him and violated his constitutional and civil rights when his children were placed in the temporary custody of the State of Kansas in September 2015, and later placed in the custody of their mother. Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 and various federal and Kansas criminal statutes.

Five of the seven defendants have filed motions to dismiss plaintiff's Second Amended Complaint (Doc. 90).[1] These motions include: defendant State of Kansas' Motion to Dismiss (Doc. 91), defendant MOMS Club's Motion to Dismiss (Doc. 93), defendant Audra Weaver's Motion to Dismiss (Doc. 94), defendant Kansas Department for Children and Families' Motion to Dismiss (Doc. 95); and defendant Krissy Gorski's Motion to Dismiss (Doc. 98).[2] After

---

[1] These defendants also filed motions to dismiss plaintiff's original Complaint (Doc. 1) and his First Amended Complaint (Doc. 31). *See* Docs. 9, 28, 45, 46, 64, 68. Plaintiff's filing of his Second Amended Complaint renders these motions moot. The court thus denies the motions as moot.

[2] The other two defendants have not answered plaintiff's Second Amended Complaint. Pro se defendant Teena Wilke filed a "Response" to plaintiff's First Amended Complaint. Doc. 49. The filing was docketed as an

carefully considering the parties' motions and plaintiff's responses to them, the court concludes that plaintiff's claims against these five defendants fail as a matter of law because the court either lacks subject matter jurisdiction or the claims fail to state a claim for relief.  The court thus grants the motions to dismiss filed by defendants State of Kansas, MOMS Club, Audra Weaver, Kansas Department for Children and Families, and Krissy Gorski.  The court explains why below.

## I.       Pro Se Litigant Standard

Because plaintiff proceeds pro se, the court must construe his filings liberally and hold them to a less stringent standard than formal pleadings drafted by attorneys.  *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This liberal standard requires the court to construe a pro se plaintiff's pleadings as stating a valid claim if a reasonable reading of them allows the court to do so "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall*, 935 F.2d at 1110.

But, at the same time, the court will not serve as a pro se litigant's advocate.  *James*, 724 F.3d at 1315.  The court "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  Also, the requirement that the court must read a pro se plaintiff's pleadings broadly "does not relieve the plaintiff of the burden of alleging sufficient

---

Answer, but it appears to seek dismissal of plaintiff's First Amended Complaint for failing to state a claim.  Even if the court construes Ms. Wilke's "Response" as a motion to dismiss, the court must deny the filing as moot because plaintiff's Second Amended Complaint is now the operative pleading in the case.  Ms. Wilke never has responded to plaintiff's Second Amended Complaint.

Ms. Wilke also filed a purported answer on behalf of MOMs Club of Olathe East (Doc. 52).  On August 11, 2016, the court ordered Ms. Wilke to show cause why it should not strike the purported answer because parties proceeding pro se may not represent other parties in federal court.  Doc. 60.  Ms. Wilke never has responded to the Show Cause Order.  In a separate order, the court strikes the Answer of MOMs Club of Olathe East filed by Ms. Wilke, for reasons already explained in the Show Cause Order.

facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110.   And, a plaintiff's pro se status does not excuse him from complying with federal and local rules.  *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants."  (citations and internal quotation marks omitted)).

## II.    Factual Background

The following facts are taken from plaintiff's Second Amended Complaint (Doc. 90) and viewed in the light most favorable to him.  *See*, *e.g.*, *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (explaining that on a Rule 12(b)(6) motion, the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the [plaintiff]" (citation and internal quotation marks omitted)).  The court also construes plaintiff's allegations liberally because he proceeds pro se.

Plaintiff and defendant Krissy Gorski had two children together.  On August 12, 2015, Ms. Gorski took the children away from plaintiff.  Ms. Gorski also reported that plaintiff was physically abusing her and the children to various agencies, including the Olathe Police Department, the Johnson County District Court, and the Department for Children and Families ("DCF").  Plaintiff asserts that Ms. Gorski's abuse claims are false.

Plaintiff accuses defendant Teena Wilke of hiding the children in her home while she and Ms. Gorski contrived the false abuse allegations.  Plaintiff also accuses Audra Weaver, President of MOMs Club of Olathe East, of assisting Ms. Gorski by hiding his children from him.  He claims Ms. Weaver knew where his children were located but refused to share that with him.  He also contends that Ms. Weaver endangered his children's safety by failing to disclose their location to him.

Also, in August 2015, plaintiff complained to DCF that Ms. Gorski was abusing drugs and physically abusing the two children.  Plaintiff claims that DCF ignored his complaints and never investigated them.  Plaintiff also asked DCF to require Ms. Gorski to submit to a urinalysis test so she would not continue to abuse drugs.  But, DCF refused plaintiff's request.

In September 2015, the Johnson County District Court placed the two children into DCF custody.  Plaintiff alleges that the judge's decision to remove the children from their parents' custody was based on false evidence submitted by Ms. Gorski.  Plaintiff claims that the state court placed the children in the temporary custody of Teena Wilkie.  Plaintiff claims that Ms. Wikie is an unlicensed foster parent who helped Ms. Gorski abuse drugs.  Plaintiff also contends that Ms. Wilke refused to allow plaintiff to see or talk to his children but permitted Ms. Gorski to visit the children at her home each day.

Plaintiff alleges that various agencies and individuals—including DCF and Assistant District Attorney Erica Miller—conspired to mischaracterize plaintiff as an abusive and aggressive man as part of an effort to deprive him of his parental rights.  To that end, plaintiff claims DCF manipulated evidence and covered up information about Ms. Gorski's criminal and drug abuse history.  Plaintiff also claims that Assistant District Attorney Erica Miller filed motions requesting the state court to forbid contact between plaintiff and his children based on false information, submitted other false evidence about plaintiff in the state court proceedings, ignored plaintiff's complaints about Ms. Gorski, withheld evidence of Ms. Gorski's criminal record and drug abuse, and authorized the children's reintegration into Ms. Gorski's home.

Plaintiff contends that Ms. Miller took these actions to retaliate for plaintiff's filing of a federal lawsuit.[3]

On January 16, 2016, DCF reintegrated the children into Ms. Gorski's home. Plaintiff claims this happened without a court ruling or other adjudication. Plaintiff also contends that the children were admitted to the emergency room on several occasions after they were placed in Ms. Gorski's care. And, plaintiff asserts that DCF ignored his requests to see his children throughout the time when these events occurred and also ignored his requests for his children's medical information.

Plaintiff alleges that defendants' actions have violated his constitutional rights. He also claims that defendants' actions have injured him by: depriving him of his children; causing him to suffer humiliation, severe emotional distress, and heartache; tarnishing his reputation as a father and church leader; and losing business. Plaintiff also claims that defendants' actions have injured his children because separating them from their father has caused them to experience abandonment, trauma, loss of appetite, loss of weight, loss of sleep, and emotional distress. Plaintiff seeks monetary damages of $350,000 from each defendant. Doc. 90 at 22.

### III.    Legal Standard

#### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. § 1331; 28 U.S.C. § 1332. "A court lacking jurisdiction cannot render judgment but must

---

[3]    Plaintiff references a separate federal lawsuit, not this one. He refers to a lawsuit he has filed against the City of Olathe, Layne Project, Safehome, Inc., KVC, and Ashlyn Yarnell (a guardian ad litem). Doc. 90 at 12; *see also* Case No. 15-4961 (D. Kan.).

dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and [to conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* at 1003 (citations omitted); *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1063–64 (10th Cir. 2012); *see also Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002) (holding that a court must convert a motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56 only when the jurisdictional question is intertwined with the merits of case).

### B.   Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

A plaintiff bears the burden to establish personal jurisdiction over each defendant named in the action.  *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179–80 (10th Cir. 2014).  But in the preliminary stages of litigation, a plaintiff's burden to prove personal jurisdiction is a light one.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).

Where, as here, the court is asked to decide a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, plaintiff must make no more than a prima facie showing of jurisdiction to defeat the motion.  *Id.* at 1056–57.  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

To defeat a plaintiff's prima facie showing of personal jurisdiction, defendants "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  Where defendants fail to controvert a plaintiff's allegations with affidavits or other evidence, the court must accept the well-pleaded allegations in the complaint as true, and resolve any factual disputes in the plaintiff's favor.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (1oth Cir. 1995).

### C.   Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the

Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give

the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009)

(quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although the court must assume that the factual allegations in the complaint are true, it is

"not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1263

(quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v.*

*Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court may

consider not only the complaint itself, but also attached exhibits and documents incorporated into

the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A

court "may consider documents referred to in the complaint if the documents are central to the

plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting

*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)) (internal quotation marks

omitted).

## IV.    Analysis

As stated above, five of the seven defendants have filed motions to dismiss.  The court considers each motion separately below.

### A.  Defendant State of Kansas' Motion to Dismiss

Plaintiff's Second Amended Complaint asserts claims against the State of Kansas ("the State") under 42 U.S.C. §§ 1983 and 1985, for alleged violations of plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause and Due Process Clause.  Doc. 90 at 12.  The State moves to dismiss plaintiff's claims under Fed. R. Civ. P. 12(b)(1).  It asserts that the Eleventh Amendment bars plaintiff's claims against the State, and thus the court lacks subject matter jurisdiction over them.

The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens," and "applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages."  *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted).  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  Eleventh Amendment immunity applies not only to states but also extends to state entities that are considered "arm[s] of the state."  *Steadfast Ins. Co.*, 507 F.3d at 1253 (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977)).

"Two circumstances exist where a citizen may sue a State in federal court without running afoul of the Eleventh Amendment." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1998). "First, a federal court may hear such suits if the State has expressly waived its Eleventh Amendment protection and consented to such suit[s] in the federal courts." *Id.* "Second, a State may have its Eleventh Amendment immunity abrogated by Congress if such abrogation was accomplished pursuant to a valid exercise of power by Congress." *Id.* The State asserts that neither exception applies here. The court agrees.

First, the State never has waived its Eleventh Amendment immunity by expressly consenting to suit in federal court. "The test for determining whether a State has waived its Eleventh Amendment immunity 'from federal-court jurisdiction is a stringent one' and in 'the absence of an unequivocal waiver specifically applicable to federal-court jurisdiction,' [the court] will not find that a State has waived its constitutional immunity." *Id.* (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), *superseded by statute on other grounds as stated in Lane v. Pena*, 518 U.S. 187, 198 (1996)). Although the State "has consented to suits for damages under the Kansas Tort Claims Act," it has not unequivocally waived Eleventh Amendment immunity through this enactment. *Jones v. Courtney*, 466 F. App'x 696, 700 (10th Cir. 2012) (quoting *Wendt v. Univ. of Kan. Med. Ctr.*, 59 P.3d 325, 335 (Kan. 2002)). To the contrary, the Kansas Tort Claims Act includes a specific preservation of this immunity: "Nothing in this section or in the Kansas tort claims act shall be construed as a waiver by the state of Kansas of immunity from suit under the 11th amendment to the constitution of the United States." Kan. Stat. Ann. § 75-6116(g); *see also Jones*, 466 F. App'x at 700–01 (explaining that the Kansas Tort Claims Act is no "waiver of Eleventh Amendment immunity" because "the statute tells us so" (citing Kan. Stat. Ann. § 75-6116(g))).

Second, Congress has never abrogated the State's Eleventh Amendment immunity through a valid exercise of its power.  It is well-established that Congress never intended to abrogate Eleventh Amendment immunity when it enacted 42 U.S.C. §§ 1983 and 1985.  *Ellis*, 163 F.3d at 1196 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).  Thus, plaintiff's §§ 1983 and 1985 claims against the State here are barred by Eleventh Amendment immunity.

Although not relevant here, an exception to Eleventh Amendment immunity exists when suits challenge the constitutionality of a state official's action enforcing state law.  *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)).  The Supreme Court has held that such a suit is not one against the state itself.  *Id.* (citing *Ex Parte Young*, 209 U.S. at 159–60).  Here, plaintiff asserts no claims against state officials for actions taken in their official capacities.  Plaintiff's Second Amended Complaint also never seeks any form of injunctive or declaratory relief.  Thus, the *Ex Parte Young* exception does not apply here.

It appears that plaintiff's Second Amended Complaint seeks to assert claims against the State on a respondeat superior theory based on actions by Assistant District Attorney Erica Miller.  Plaintiff alleges, for example, that Ms. Miller filed motions requesting no contact between plaintiff and his children premised on false information, submitted other false evidence about plaintiff in the state court proceedings, ignored plaintiff's complaints about Ms. Gorski, withheld evidence of Ms. Gorski's criminal record and drug abuse, and authorized the children's reintegration into Ms. Gorski's home.  But, plaintiff cannot hold the State vicariously liable for Ms. Miller's actions under §§ 1983 or 1985.  *See*, *e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("Respondeat superior or vicarious liability will not attach under § 1983."); *Howard v. Topeka Shawnee Cty. Metro. Planning Comm'n*, 578 F. Supp. 534, 538–39 (D. Kan. 1983) (holding that no vicarious liability exists for claims brought under §§ 1983 or 1985).

For all these reasons, the Eleventh Amendment confers sovereign immunity on the State. The court thus lacks subject matter jurisdiction over plaintiff's claims. And, consequently, it grants the State's Motion to Dismiss.

### B.  Defendant Department for Children and Families' Motion to Dismiss

Plaintiff's Second Amended Complaint asserts claims against DCF under 42 U.S.C. §§ 1983 and 1985, for alleged violations of plaintiff's rights under the Fourteenth Amendment's Equal Protection and Due Process Clauses. Doc. 90 at 12. Plaintiff also asserts a claim under Kan. Stat. Ann. § 21-5601, a criminal statute prohibiting child endangerment.

Defendant DCF moves to dismiss plaintiff's claims because, it contends, it also is entitled to Eleventh Amendment immunity. Eleventh Amendment immunity applies not only to states but also extends to state entities that are considered "arm[s] of the state." *Steadfast Ins. Co.*, 507 F.3d at 1253 (citing *Doyle*, 429 U.S. at 280).

Here, DCF is an agency of the State of Kansas, and "not a legal entity capable of being sued." *Protheroe v. Pokorny*, No. 16-2387-CM, 2016 WL 6822657, at *4 (D. Kan. Nov. 18, 2016); *see also McCollum v. Kansas*, No. 14-1049-EFM-KMH, 2014 WL 3341139, at *6 (D. Kan. July 8, 2014), *aff'd*, 599 F. App'x 841 (10th Cir. 2015) (explaining that "DCF is the agency through which the state acts in all matters that relate to children who are found to be in need of care" and thus is "an arm of the state"). Thus, the court lacks subject matter jurisdiction over plaintiff's claims against DCF for the same reasons that it lacks subject matter jurisdiction over the claims against the State of Kansas, as discussed in the preceding section. The court thus grants defendant DCF's Motion to Dismiss.

### C.  Defendant MOMs Club's Motion to Dismiss

Plaintiff's Second Amended Complaint asserts claims against MOMs Club ("MOMs Club") under 42 U.S.C. § 1983, for alleged violations of plaintiff's rights under the Fourth Amendment and the Fourteenth Amendment's Due Process Clause.  Doc. 90 at 20.

MOMs Club moves to dismiss plaintiff's claims for two reasons.  First, MOMs Club asserts that the court lacks personal jurisdiction over it.  Second, MOMs Club asserts that plaintiff cannot assert a claim against MOMs Club under § 1983 because such a claim requires state action and MOMs Club is not a state actor.  The court agrees on both points.  It explains why below.

### 1.  Defendant MOMs Club is not subject to personal jurisdiction in Kansas.

Plaintiff's Second Amended Complaint asserts federal question subject matter jurisdiction.  Doc. 90 at 1 ("The Federal Court has subject matter jurisdiction and has the power to hear and make binding judgment over this complaint because it is a Case brought under the Federal Laws of Civil Rights.").  Section 1331 of Title 28 of the United States Code confers original jurisdiction on federal district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In a federal question case, like this one, a court can assert personal jurisdiction over a defendant if:  (1) the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant; and (2) the exercise of jurisdiction comports with due process.  *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015).

Here, plaintiff brings claims against MOMs Club under § 1983.  This statute does not provide for nationwide service of process.  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006).  Fed. R. Civ. P. 4(k)(1)(A) thus governs service.  *Id.*; *see also Dudnikov v. Chalk &*

*Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing Fed. R. Civ. P. 4(k)(1)(A)).  This Rule requires the court to apply the law of the forum state where the district court is situated.  Fed. R. Civ. P. 4(k)(1)(A).

Kansas' long-arm statute is construed liberally to permit exercise of jurisdiction in every situation consistent with the United States Constitution.  *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994); *see also* Kan. Stat. Ann. § 60-308(b)(1)(L) & (b)(2).  Thus, the court need not conduct a separate personal jurisdiction analysis under Kansas law, because the "first, statutory, inquiry effectively collapses into the second, constitutional, analysis."  *Dudnikov*, 514 F.3d at 1070.

The constitutional analysis requires a court to determine whether "exercise[ing] jurisdiction [is] in harmony with due process."  *Id.*  This analysis involves a two-step inquiry: (1) a defendant "must have 'minimum contacts' with the forum state, such that having to defend a lawsuit" in the forum, (2) "would not 'offend traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Plaintiffs can satisfy the "minimum contacts" standard in either one of two ways—by establishing general jurisdiction or specific jurisdiction based on a defendant's contacts with the forum state. *Rockwood Select Asset Fund*, 750 F.3d at 1179.  The Tenth Circuit has described how general jurisdiction and specific jurisdiction differ, as follows:

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim [at issue] be related to those contacts.  Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*:  in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

*Dudnikov*, 514 F.3d at 1078 (citations omitted).

Here, neither general nor specific personal jurisdiction exists.  MOMs Club lacks sufficient contacts with Kansas to subject itself to jurisdiction in this forum.  With its Motion to Dismiss, MOMs Club has submitted a Declaration of Mary James.  Doc. 93-1.  Ms. James is the Founder and Chairman of MOMs Club.  *Id.*  Ms. James declares that MOMs Club is a corporation organized under California law.  *Id.*  Its corporate operations are carried out by volunteers located throughout the country, but none of the volunteers are in Kansas.  *Id.*  It does not own any real property in Kansas.  *Id.*  The corporation's registered agent is located in California.  *Id.*  Plaintiff served MOMs Club in this action by certified mail.  *Id.*  Ms. James also declares that Audra Weaver is not and never has been the President of MOMs Club.  *Id.*  And, she declares that MOMs Club did not direct, coordinate, support, approve, condone, participate in, or provide advice for any of the actions alleged in plaintiff's Second Amended Complaint.  *Id.*

Under these facts, MOMs Club lacks sufficient contacts with Kansas to confer specific personal jurisdiction.  *See Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (explaining that a court may exercise specific personal jurisdiction if:  (1) the out-of-state defendant "purposefully directed" his activities at residents of the forum state, and (2) the plaintiff's injuries arose from those purposefully directed activities).  These facts also fail to establish sufficient minimum contacts for the court to exercise general jurisdiction.  *See Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (explaining that a court may exercise general jurisdiction if the defendant's contacts with the forum are "so continuous and systematic as to render [it] essentially at home in the forum State" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).

Plaintiff responds[4] with unsubstantiated allegations that MOMs Club is "one in the same" as a local chapter—MOMs Club of Olathe East.  Doc. 100 at 4.  Plaintiff asserts that the local chapter "functions under the jurisdiction of Moms Club which unites as one organization."  *Id.* He also contends that the local chapter pays an annual registration fee to MOMs Club, the national organization, and that the local chapter is required to abide by the national organization's by-laws.  *Id.* at 3.  Thus, plaintiff asserts, no separation exists between MOMs Club and the local chapter for personal jurisdiction purposes.  *Id.*

Even accepting plaintiff's allegations as true, they cannot suffice to confer general personal jurisdiction over MOMs Club, as a national organization.  Other courts that have addressed this issue have required the national organization to exert control over the local chapter's actions such that the local chapter's activities are imputed to the national organization. *See*, *e.g.*, *Amazon.com, Inc. v. Nat'l Ass'n of Coll. Stores, Inc.*, 826 F. Supp. 2d 1242, 1253 (W.D. Wash. 2011) (holding that although a trade association had members in the forum state and provided advocacy services and resources for those members, those contacts "fall well short of the requisite showing for general jurisdiction" because it did not control the activities of those members (citations and internal quotation marks omitted)); *Grand Aerie Fraternal Order of Eagles v. Haygood*, 402 S.W.3d 766, 778–82 (Tex. Ct. App. 2013) (holding, under Texas law, that no personal jurisdiction existed over a national organization because its alleged contacts

---

[4]      MOMs Club moved to strike plaintiffs' Opposition (Doc. 100) as untimely.  *See* Doc. 102 ("Motion To Strike Plaintiff's Response to Motion to Dismiss").  It asserts that plaintiff filed his Opposition two days out of time without seeking the court's leave to do so.  *See* D. Kan. Rule 6.1(d)(2) (providing that "[r]esponses to motions to dismiss . . . must be filed and served within 21 days").  The court has discretion to sanction a party for filing an untimely response by striking the filing.  *Sheldon v. Khanal*, No. 07-2112-KHV, 2008 WL 474262, at *2 n.3 (D. Kan. Feb. 19, 2008) (citing *Curran v. AMI Fireplace Co.*, 163 F. App'x 714, 718 (10th Cir. 2006, which reviewed a decision to strike untimely response for abuse of discretion).  The court finds no need to strike plaintiff's Opposition here.  The arguments plaintiff asserts in his filing do not change the outcome of the motion to dismiss, so the court considers it.  *See id.* (denying a motion to strike an untimely filing because "[a]lthough the Court discourages such tardiness, [the filing's] arguments will not materially change the resolution of [the pending] motion").  The court thus denies MOMs Club's Motion to Strike.

16

with a local chapter were too attenuated for the exercise of specific jurisdiction; the local chapter's contact with state could not be imputed to the national organization on an alter ego theory for purposes of general personal jurisdiction; and alleged contacts of the national organization with the state were insufficient to establish general jurisdiction). *Cf. Acad. of Ambulatory Foot Surgery v. Am. Podiatry Assoc.*, 516 F. Supp. 378, 381 (S.D.N.Y. 1981) (finding venue inappropriate in the forum because the court could not attribute the activities of the separately incorporated New York chapter to the national organization located in Washington, D.C.).

Plaintiff's conclusory allegations about the connection between MOMs Club and its local chapter in Olathe, Kansas, fail to establish the requisite control to subject the national organization to general personal jurisdiction. Plaintiff bears the burden to establish personal jurisdiction, and he has not met that burden here. The court thus concludes that no personal jurisdiction exists over MOMs Club in this forum. And, the court grants MOMs Club's Motion to Dismiss for this reason.

### 2. Defendant MOMs Club is not a state actor, and thus cannot be liable for a claim brought under 42 U.S.C. § 1983.

Even if the court could exercise personal jurisdiction over MOMs Club, plaintiff fails to state a claim against it because it is not a state actor. "Section 1983[ ] liability attaches only to conduct occurring 'under color of law.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (quoting 42 U.S.C. § 1983). So, "the only proper defendants in a Section 1983 claim are those who 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" *Id.* (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (further citations and internal quotation marks omitted)). Section 1983's requirement that a defendant act "under color of state law" "is 'a jurisdictional

requisite for a § 1983 action.'"  *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (quoting

*Polk Cty. v. Dodson*, 454 U.S. 312, 315 (1981)).

So, to state a viable § 1983 claim, a plaintiff must allege sufficient facts demonstrating,

plausibly, that the private individual or entity's conduct allegedly causing a constitutional

deprivation is "fairly attributable to the state."  *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000)

(citations and internal quotation marks omitted).  The Tenth Circuit has applied four different

tests to determine whether a private entity is subject to liability under § 1983 as a state actor:  the

nexus test, the symbiotic relationship test, the joint action test, and the public function test.

*Gallagher*, 49 F.3d at 1447.

The nexus test requires a "sufficiently close nexus between the government and the

challenged conduct" and, in most cases, renders a state liable for a private individual's conduct

"only when [the State] has exercised coercive power or has provided such significant

encouragement, either overt or covert, that the choice must in law be deemed to be that of the

State."  *Id.* at 1448 (citations and internal quotation marks omitted).  The symbiotic relationship

test asks whether the state "has so far insinuated itself into a position of interdependence with a

private party that it must be recognized as a joint participant in the challenged activity."  *Id.* at

1451 (citations and internal quotation marks omitted).  The joint action test requires courts to

"examine whether state officials and private parties have acted in concert in effecting a particular

deprivation of constitutional rights."  *Id.* at 1453 (citations omitted).  Finally, the public function

test asks whether the challenged action is "a function traditionally exclusively reserved to the

State."  *Id.* at 1456 (citations and internal quotation marks omitted).

Plaintiff has alleged no facts in his Second Amended Complaint to state an actionable

claim against MOMs Club for conduct that was "fairly attributable to the state" under any of

these tests.  Plaintiff alleges that MOMs Club is "an international community for 'Stay at home moms.'"  Doc. 90 at 21.  He concedes that MOMs Club is not a state actor by alleging that it "is not a legal agency to remove children from the home of any residence."  *Id.*  Plaintiff's Second Amended Complaint never even asserts that MOMs Club acted under color of state law. Although plaintiff accuses members of the local chapter of hiding plaintiff's children and endangering their safety, he never asserts any facts that MOMs Club—the national organization—committed these acts, much less any facts that MOMs Club acted jointly or in some relationship with the State to support a claim under § 1983.  Without such allegations, plaintiff's Second Amended Complaint fails to allege an actionable § 1983 claim against MOMs Club.  Thus, even if personal jurisdiction existed in Kansas over MOMs Club, the court still would dismiss plaintiff's claims against it.

### D.  Defendant Audra Weaver's Motion to Dismiss

Plaintiff's Second Amended Complaint asserts claims against Audra Weaver under 42 U.S.C. § 1983, for alleged violations of plaintiff's rights under the Fourth Amendment and the Fourteenth Amendment's Due Process Clause.  Doc. 90 at 20.  Like MOMs Club, Ms. Weaver moves to dismiss plaintiff's claims because she is not a state actor and thus cannot be held liable under § 1983.

Plaintiff's Second Amended Complaint alleges that Audra Weaver is President of MOMs Club of Olathe East.  Plaintiff accuses Ms. Weaver of assisting Ms. Gorski with hiding his children from him.  He claims Ms. Weaver knew where his children were located and refused to provide him that information.  He also contends that Ms. Weaver endangered his children's safety by failing to disclose their location.  Plaintiff's Second Amended Complaint never asserts that Ms. Weaver is a state actor.  It also never asserts any facts showing that Ms. Weaver's

conduct is "fairly attributable to the state" to support a viable § 1983 claim.  *Scott*, 216 F.3d at

906.  Plaintiff alleges no facts establishing any connection between the State and Ms. Weaver or

other facts sufficient to subject her to § 1983 liability as a state actor under the nexus text,

symbiotic test, or joint action test.  *See Gallagher*, 49 F.3d at 1447.  Plaintiff also never asserts

any facts showing that Ms. Weaver's actions are "function[s] traditionally exclusively reserved

to the State" to satisfy the public function test and subject Ms. Weaver to § 1983 liability.  *Id.* at

1456 (citations and internal quotation marks omitted).  Indeed, plaintiff concedes that MOMs

Club is "is not a legal agency to remove children from the home of any residence."  Doc. 90 at

21.  Thus, Ms. Weaver, as President of MOMs Club, was not performing any state functions

because, plaintiff contends, Ms. Weaver's actions involved the illegal removal of children—not

something that is a traditional and exclusive function of the State.

    Plaintiff submitted an Opposition to Ms. Weaver's motion.[5]  Doc. 101.  In it, he asserts

conclusory allegations against Ms. Weaver and the MOMs Club of Olathe East of "working

conjointly," "work[ing] collaboratively," and having a "connection to the governmental actors

and through their actions with state actors."  *Id.* at 3, 4, 5.  These allegations appear nowhere in

plaintiff's Second Amended Complaint.  So, the court cannot consider them on a motion to

dismiss.  *See Jojola*, 55 F.3d at 494 (explaining that when "determining whether to grant a

motion to dismiss, the district court . . . [is] limited to assessing the legal sufficiency of the

allegations contained within the four corners of the complaint").  And, even so, plaintiff's

conclusory allegations fail to establish plausible factual allegations of state action to subject Ms.

Weaver to § 1983 liability.   *See Wastach Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th

Cir. 2016) (explaining that "[t]hreadbare recitals of the elements of a cause of action, supported

---

[5]      Ms. Weaver asks the court to disregard plaintiff's Opposition because it was not timely filed.  Because
plaintiff's Opposition does not influence the disposition of Ms. Weaver's motion, the court exercises its discretion to
consider it, even if it was untimely.

by mere conclusory statements, do not suffice" to state a claim for relief); *see also Banks v. Geary Cty. Dist. Ct.*, 645 F. App'x 713, 716–18 (10th Cir. 2016) (affirming dismissal of a pro se plaintiff's § 1983 claim and explaining that "[c]onclusory allegations are not enough to withstand a motion to dismiss" and "courts will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf" (citations and internal quotation marks omitted)).  For these reasons, plaintiff's Second Amended Complaint fails to assert a viable § 1983 claim against Ms. Weaver.  The court thus grants Ms. Weaver's Motion to Dismiss.

### E.  Defendant Krissy Gorski's Motion to Dismiss

Plaintiff's Second Amended Complaint asserts claims against Krissy Gorski under 8 U.S.C. § 1324c(a), 18 U.S.C. §§ 875, 1038, and Kan. Stat. Ann. §§ 21-6103(1)(a)(b), 38-2223(e).  Doc. 90 at 18.  It also alleges that Ms. Gorski violated plaintiff's Fourth Amendment rights.  *Id.*  Ms. Gorski moves to dismiss plaintiff's claims against her under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failing to state a claim.

Ms. Gorski's motion also accuses plaintiff of initiating vexatious litigation against her. She asks the court to sanction plaintiff and prohibit him from filing other lawsuits against her.  In support of this request, Ms. Gorski asserts that plaintiff is prohibited from contacting her by a court order and that he is litigating this action only as a way of harassing and humiliating her. Ms. Gorksi accuses plaintiff of bizarre behavior and hallucinations.  She also contends that plaintiff tricked her into marrying him in a ceremony that, she later learned was not legal, in an attempt to "mislead [Ms. Gorski] into a polygamous marriage" that involved plaintiff "try[ing] to impregnate his former wife, now his concubine, as well as [Ms. Gorski], and others he could lure

in as well, as [the women] were to bore him male children." Doc. 98 at 4–5. Ms. Gorski believes that plaintiff "intended to kill her and the children for a life insurance payout." *Id.* at 6. She believes so because, she contends, plaintiff obtained a firearm and attempted to place a $250,000 life insurance policy on Ms. Gorksi. Ms. Gorski also accuses defendant of threatening and physically abusing her and her children.

Plaintiff has filed a 28-page opposition to Ms. Gorski's motion. Doc. 99. In it, plaintiff denies Ms. Gorski's allegations of abuse. He contends that plaintiff has falsely accused him of abuse to receive free housing, state assistance, and support from agencies. Plaintiff asserts that the court entered the no contact order to protect him because, he contends, Ms. Gorski was stalking him. Plaintiff accuses Ms. Gorski of having an extensive drug abuse and criminal history. Plaintiff contends that he "rehabilitated" Ms. Gorski, and he denies that he brought her into a polygamous relationship or that he intended to kill her for an insurance payoff. Doc. 99 at 9. Plaintiff also reiterates his accusations that Ms. Gorksi has abused her children. The court also has reviewed various materials that plaintiff has submitted to the court, although not relevant to the pending motions to dismiss. Plaintiff contends these materials support his allegations against Ms. Gorski of making false abuse claims against him. These materials include text messages and an audio file of a telephone call between plaintiff and Ms. Gorski.

After reviewing the parties' competing submissions, the court declines to weigh into their highly contentious allegations and denials of abusive behavior. Plaintiff and Ms. Gorski, it seems, have a complicated and acrimonious history. The court need not discuss their animosity toward each other. Instead, the court can dismiss plaintiff's claims against Ms. Gorski because they fail to state viable and plausible claims recognized by our laws. And, the court declines to sanction plaintiff on this record of competing allegations.

Ms. Gorski asserts that plaintiff cannot bring a claim against her for violations of plaintiff's Fourth Amendment rights.  Like the other defendants, Ms. Gorski asserts that she is not state actor, and thus is not subject to § 1983 liability for purportedly violating plaintiff's constitutional rights.  The court agrees.  Plaintiff's Second Amended Complaint accuses Ms. Gorski of asserting false allegations against him to various state agencies and conspiring to deprive plaintiff of his parental rights.  But it never alleges that Ms. Gorksi is a state actor.  It also asserts no facts establishing any connection between the State and Ms. Gorski or her actions sufficient to subject her to § 1983 liability as a state actor under any of the Tenth Circuit's tests.  *See Gallagher*, 49 F.3d at 1447.

Plaintiff's Opposition asserts conclusory allegations that Ms. Gorski "worked in conjunction" and in a "collaborated team effort" with state actors.  Doc. 99 at 24.  But, plaintiff's Second Amended Complaint never asserts these allegations.  Thus, the court cannot consider them on a motion to dismiss.  *See Jojola*, 55 F.3d at 494.  And, even if the court considered them, plaintiff's conclusory allegations, without sufficient factual support, fail to establish plausible allegations of state action sufficient to subject Ms. Weaver to § 1983 liability.  *See Wastach Equal.*, 820 F.3d at 386; *see also Banks*, 645 F. App'x at 716–18.  The court thus dismisses plaintiff's claims for alleged constitutional violations against Ms. Gorski.

Plaintiff's other statutory claims against Ms. Gorski also fail to state a claim as a matter of law.  Plaintiff asserts claims under three federal criminal statutes:  8 U.S.C. § 1324c(a) and 18 U.S.C. §§ 875 and 1038.  Section 1324c of Title 8 of the United States Code prohibits any person from making or using fraudulent documents to satisfy the requirements of or to obtain a benefit under the Immigration and Nationality Act.  8 U.S.C. § 1324c.  Section 875 of Title 18 of the United States Code prohibits extortion threats using interstate communications.  18 U.S.C. § 875.

Section 1038 of Title 18 of the United States Code prohibits criminal hoaxes and terrorist threats. 18 U.S.C. § 1038.

None of these federal criminal statutes confer on plaintiff the right to assert a private cause of action. *See*, *e.g.*, *Clements v. Chapman*, 189 F. App'x 688, 692 (10th Cir. 2006) (holding that "none of the criminal statutes" that plaintiff cited in his complaint—including 18 U.S.C. § 875—"provide for a private cause of action"); *Johnson v. Working Am., Inc.*, No. 1:12CV1505, 2012 WL 3074775, at *2 (N.D. Ohio July 30, 2012) (finding that, as a private citizen, the plaintiff had no authority to initiate a federal criminal prosecution under 18 U.S.C. § 1038); *United States v. Richard Dattner Architects*, 972 F. Supp. 738, 747 (S.D.N.Y. 1997) (finding, in the context of 8 U.S.C. § 1324c, that "plaintiff has no standing to assert a claim under the INA because the statute does not create a private right of action to redress a violation" of that statute). Thus, plaintiff's claims under these federal criminal statutes fail to state a claim for relief. *See Clements*, 198 F. App'x at 692 (affirming district court's dismissal of alleged violations of federal criminal statutes because the statutes provided no private cause of action).

Plaintiff also asserts claims against Ms. Gorski under Kan. Stat. Ann. §§ 21-6103(1)(a)(b) and 38-2223(e). Kan. Stat. Ann. § 21-6103 makes a criminal false communication a class A nonperson misdemeanor. Kan. Stat. Ann. § 38-2223(e) makes illegal the willful and knowing failure to make a mandatory report of child abuse, establishing a class B misdemeanor. Neither statute provides that a private litigant may assert a civil cause of action under these criminal statutes. And plaintiff fails to show that the Kansas legislature intended to include a private right of action when it enacted these criminal statutes. *See Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1128 (D. Kan. 2000) (dismissing plaintiff's claims for violation of Kansas criminal statutes because plaintiff "does not show that the legislature intended to grant him a private cause of

24

action for the violations of the citied criminal statutes"). Plaintiff thus fails to state a claim under either Kan. Stat. Ann. § 21-6103 or § 38-2223(e). And, so, the court grants Ms. Gorski's Motion to Dismiss plaintiff's claims against her. The court declines, however, to impose the requested sanctions.

## V.      Conclusion

For the above reasons, the court grants each of the pending motions to dismiss. Plaintiff's Second Amended Complaint fails to assert viable claims against these five defendants because either no subject matter or personal jurisdiction exists or the claims fail to state a claim for relief as a matter of law. The operative Complaint is plaintiff's third attempt at asserting claims against these defendants. The court finds no reason to provide him another opportunity to amend his allegations when he has had ample opportunity to do so and his revised pleading still fails to state claims against these defendants as a matter of law.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant State of Kansas' Motion to Dismiss (Doc. 91) is granted.

**IT IS FURTHER ORDERED THAT** defendant MOMS Club's Motion to Dismiss (Doc. 93) is granted.

**IT IS FURTHER ORDERED THAT** defendant Audra Weaver's Motion to Dismiss (Doc. 94) is granted.

**IT IS FURTHER ORDERED THAT** defendant Kansas Department for Children and Families' Motion to Dismiss (Doc. 95) is granted.

**IT IS FURTHER ORDERED THAT** defendant Krissy Gorski's Motion to Dismiss (Doc. 98) is granted.

**IT IS FURTHER ORDERED THAT** defendant MOMS Club's Motion to Strike (Doc. 102) is denied.

**IT IS FURTHER ORDERED THAT** defendant Kansas Department for Children and Families' Motion to Dismiss (Doc. 9), defendant State of Kansas' Motion to Dismiss (Doc. 28), defendant Audra Weaver's Motion to Dismiss (Doc. 45), defendant State of Kansas' Motion to Dismiss (Doc. 46), defendant MOMS Club's Motion to Dismiss (Doc. 64), and defendant Kansas Department for Children and Families' Motion to Dismiss (Doc. 68) are denied as moot.

**IT IS SO ORDERED.**

**Dated this 23rd day of March, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree_____**
**Daniel D. Crabtree**
**United States District Judge**